***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, with the North Carolina Industrial Commission having subject matter and personal jurisdiction over the parties.
2. At all relevant times, an employer-employee relationship existed between Plaintiff and Defendant.
3. At all relevant times, Defendant was self-insured for injuries sustained under the Workers' Compensation Act.
4. Compensability for the injury of January 5, 1999, has been accepted by Defendant and compensation has been paid to Plaintiff for said injury.
5. Plaintiff's average weekly wage was $705.60, which yields a compensation rate of $470.42 per week.
 *********** ISSUES
1. Whether Plaintiff is permanently totally disabled from employment?
2. Whether Plaintiff is entitled to continuing temporary total disability compensation, with Defendant receiving credit for Plaintiff's unsuccessful trial returns to work?
3. Whether Defendant is obligated to pay the costs of the second opinion PPD rating of 8/21/01?
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: Medical records, vocational rehabilitation records, job log. *Page 3 
 b. Stipulated Exhibit #2: I.C. Forms, discovery responses (Submitted post-hearing).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 59 years old. She is a high school graduate with one semester of college. Plaintiff worked for Defendant, its predecessors and successor for 28 years. She worked in the Quality Control Department as a lab technician on the date of her compensable injury.
2. On January 5, 1999, Plaintiff was retrieving pulp samples from a warehouse when she slipped on oil or grease and fell, sustaining an injury to her left hand. Plaintiff is right hand dominant. She was treated at the plant medical facilities by Dr. Tyson and thereafter received treatment from Dr. Mark Hazel and Dr. Bruce Minkin.
3. After the injury Plaintiff continued to work in her regular job with Defendant as a lab tech. On November 19, 1999, Plaintiff underwent a left carpometacarpal joint reconstruction with trapeziectomy, APL tendon transfer, and palmaris longus tendon graft and pinning of metarsophalangeal joint, performed by Dr. Minkin.
4. Plaintiff returned to work on November 30, 1999. She initially entered data on a computer until her stitches were removed, and then she returned to her lab tech duties. Ultimately, Plaintiff resumed performing all duties as a lab tech with the exception of carrying five gallon buckets containing wet pulp samples to the lab. Defendant assigned a helper to assist *Page 4 
with the caring and lifting of the buckets. The helper was not hired strictly for that purpose but held a different position at the plant as well.
5. On November 3, 2000, Dr. Minkin found Plaintiff to be at maximum medical improvement, although he noted that Plaintiff still had some limitations to strength and range of movement of the thumb and some laxity of the MP joint. On November 8, 2000, Dr. Minkin gave Plaintiff a permanent partial disability rating of 12% to the left hand, based on lack of range of motion, decreased pinch and grip strength. He did not assign any work restrictions based upon Plaintiff's claim that she was not having any problems at work and did not require any note of restrictions. Dr. Minkin opined that Plaintiff should not have had any problems with carrying the five gallon buckets as the task is usually done by hooking the fingers and does not place pressure on the carrier's thumb. Plaintiff was released to return on a per need basis. She did not return to Dr. Minkin.
6. Plaintiff worked continuously thereafter as a lab tech at her pre-injury wages until the plant closed under different ownership on August 15, 2002. Plaintiff was able to perform all aspects of her job as a lab tech for the entire time after Dr. Minkin released her until the plant closed more than two and half years later. There is nothing in the record indicating that Plaintiff's return to work following surgery was a "trial return to work."
7. On August 28, 2001, Plaintiff presented to Dr. Carol A. Koostra for a second opinion on her rating. Dr. Koostra noted that Plaintiff complained of "daily constant pain which is aching and traveling into her thumb area with a sensation of burning and coldness." She also noted that Plaintiff had difficulty lifting weights greater than 20-40 pounds, although this is not attributed to her thumb problems in Dr. Koostra's notes. She recognized that Plaintiff was having trouble doing household chores and was unable to obtain a second job, but does not *Page 5 
identify to what job she was referring. Dr. Koostra rated Plaintiff with a 30% permanent partial impairment to the left thumb, based upon the North Carolina Guides to the Evaluation of Physical Impairment.
8. Other than obtaining this second opinion, there is no evidence of record that Plaintiff sought any medical attention for her thumb condition since being released by Dr. Minkin.
9. Subsequent to the plant closing, Plaintiff applied for and received unemployment benefits with the Employment Security Commission. She certified in her application that she was "willing and able" to work, and performed a job search during the time she was receiving benefits. Plaintiff was unable to obtain documentation from the ESC as to the exact amount she received, but estimated that she received approximately six months of benefits at approximately $350.00 per week.
10. In June and July 2005, Plaintiff worked with Nutro Dog Food as a product demonstrator at area pet stores such as Pet Smart. She discontinued working with Nutro because the driving often required 90 mile round-trips to Asheville and also because carrying the 40 pound bags of dog food to the cash register was too difficult for her. She worked a total of 67 hours during these two months at the rate of $11 per hour.
11. Plaintiff next worked with Whitmire Grading as a part-time receptionist from February 2006 to February 2007. During the 12 month period she worked a total of 127 hours at the rate of $8.50 per hour. Plaintiff discontinued working in this job because the owner passed away and she was no longer needed.
12. On February 14, 2007, Plaintiff contracted a case of shingles and was in bed for approximately six weeks. She did not look for work during this time. About the time Plaintiff *Page 6 
recovered, her husband was undergoing surgery of his own that kept him out of work until July and Plaintiff stayed home to care for him. Plaintiff experienced a recurrence of shingles in October or November. As a result of these problems, Plaintiff did not look for work at all for the entire calendar year of 2007, with the exception of applications filed with Lowes and Home Depot on 30 July 2007.
13. Plaintiff introduced credible evidence into the record concerning her job search activities after Defendant's plant closed on August 15, 2002. Her job search log covered the time period from September 3, 2002, through August 2008. Plaintiff testified that during that time period she searched for jobs on a regular basis and performed limited work for two employers. Although there were some periods of time when Plaintiff could not perform job searches due to personal or family illnesses, Plaintiff has established that she engaged in substantial and meaningful job search efforts after she lost her job with Defendant.
14. Both parties had Plaintiff's case evaluated by vocational experts, Gregory Henderson for Defendant, and Jack Dainty for Plaintiff. Having reviewed both reports, the undersigned find that Mr. Dainty's evaluation is based on perceived restrictions that have never been assigned to Plaintiff by a medical provider and so result in inaccurate conclusions as to the types of positions Plaintiff is capable of obtaining. Mr. Henderson's evaluation contains recommended positions that pay relatively low wages compared to Plaintiff's pre-injury wages and so call into question their suitability under the Act. In his deposition testimony, Mr. Henderson stated that it is reasonable to assume Plaintiff's starting salary for potential jobs is about $11.00 per hour for the occupations he identified, and possibly $8.00 per hour. Mr. Henderson's opinion that Plaintiff could expect a starting salary of about $11.00 per hour establishes that the occupations he identified are not suitable employment for Plaintiff. Based on *Page 7 
Plaintiff's stipulated average weekly wage of $705.60, her pre-injury hourly wage was $17.64. Accordingly, the evidentiary record establishes that no suitable employment exists in the local economy which Plaintiff can perform. Plaintiff's inability to find suitable employment is not related to current economic conditions because Plaintiff has been unable to find suitable employment since August 15, 2002, despite reasonable job search efforts.
15. The undersigned finds as fact that the greater weight of the evidence shows that Plaintiff has not been consistently employable since the plant closing on August 15, 2002, and that her thumb condition has been problematic, and has rendered her disabled from employment. As the result of her January 5, 1999, injury by accident, Plaintiff has been unable to earn the wages which she was receiving at the time of her injury in the same or any other employment from August 15, 2002, through the present and continuing.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on January 5, 1999, for which she is entitled temporary total compensation in the amount of $470.42 per week from August 16, 2002, to the present and continuing. N.C. Gen. Stat. §§ 97-2(6), 97-2(9), 97-29.
2. Plaintiff's two post-injury employments and all jobs available to Plaintiff within her physical and vocational capacities are not suitable employment and thus are not representative of Plaintiff's post-injury earning capacity. N.C. Gen. Stat. § 97-32;Peoples v. Cone Mills Corp.,316 N.C. 426, 342 S.E. 2d 798 (1986); Saums v. Raleigh CommunityHospital, *Page 8 346 N.C. 760, 487 S.E. 2d 746 (1997); and Russell v. Lowe'sProduction Distribution,108 N.C. App. 762, 425 S.E. 2d 454 (1993).
3. Defendant is entitled to a credit for wages Plaintiff earned in her two unsuccessful attempts to return to work and unemployment benefits paid subsequent to Plaintiff's injury by accident. N.C. Gen. Stat. §§ 97-42, 97-42.1.
4. Plaintiff is entitled to have Defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability, including the payment by Defendant for the second opinion of Dr. Koostra, subject to the statute of limitations prescribed in N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff is entitled to temporary total disability compensation in the amount of $470.42 per week from August 16, 2002, to the present and continuing until further order of the Commission, subject to Defendant's credits, and subject to the attorney's fee provided for hereinafter. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below and subject to Defendant's credits.
2. An attorney's fee of twenty-five percent (25%) of the accrued back payment of TTD is approved for Plaintiff's attorney. Thereafter, every fourth (4th) TTD check shall be made payable and forwarded to Plaintiff's attorney until further order of the Commission. *Page 9 
3. Defendant is to pay the cost of Plaintiff's second opinion permanent partial disability evaluation, pursuant to N.C. Gen. Stat. § 97-27(b).
4. Defendant shall pay medical expenses incurred or to be incurred when medical bills have been submitted according to established Industrial Commission procedures.
5. Defendant shall pay the costs.
This the 27th day of April, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION:
 S/___________________ DIANNE C. SELLERS COMMISSIONER